## ALLEN v. DUNHAM.

The division of the state into four judicial districts, by the statute which took effect on the 10th day of February, 1847, produced a vacancy in the office of district judge in each judicial district; which vacancy continued till the election of district judges by the people on the first Monday in April following.

During such vacancy no writ could issue from the district court with the requisite attestation of the judge.

The territorial judges, holding over under the constitution of the state, could not act as judges of the supreme court, and also of the district courts; as the two offices in the same person are constitutionally incompatible.

The note of the secretary of state, appended to an act of the general assembly as published in pamphlet form, stating that the act was published in certain papers at a given date, is not evidence of the fact.

The courts will determine, as they are bound and are presumed to know, ex-officio, when a law takes effect.

### ERROR, to Des Moines District Court.

*Grimes* and *Starr*, for the plaintiff in error. The only ground for this decision is, that on the 4th Feb., 1847, a law was approved by the governor, dividing the state into four districts, (Laws of 1847, p. 39;) and that the effect of dividing the state into four districts was to vacate the office of Charles Mason, as judge of the first judicial district.

To this we reply:

1. That the law had no such effect. The organic law provides for a chief justice and two associates, who are required to hold a supreme court for trial of writs of error and appeals from the district courts of the several counties, and whose duty was also to preside in the district courts of the counties to which they might be assigned by the territorial legislature.

That legislature did divide the territory into three districts, and did assign, by law, Charles Mason to preside in the district courts of the first judicial district. That district embraced the county of Des Moines, and the law relied on embraces the county of Des Moines in the first judicial district.

The constitution of Iowa, in the schedule, adopts and con-

tinues in force all the laws of Iowa Territory, until altered or repealed; and furthermore, requires all officers in said territory to exercise the duties of their respective offices and appointments until superseded under the constitution. The constitution provided for superseding Judge Mason by a judge, to be elected by the people. The state legislature directed said judge to be elected in April, 1847. Until the election, then, there could be no successor; and he must continue to be presiding judge up to the election, because the law assigning him to the first judicial district was adopted as a law of the state, and was in full force.

2. But if the court shall determine that the law referred to would, in effect, oust Judge Mason from his appointment as judge of the first district, a still graver question arises, whether, on a motion to quash, the court had a right to treat the law as in force on the 26th Feb., 1847.

The last section of that law provides that it shall take effect by publication in newspapers. It was approved February 4; but whether it had been published at all in newspapers does not appear from the statute book. There is a printed memorandum in relation to it, which was inserted without any authority of law, and which the defendant admits proves nothing.

How, then, could the court determine that it was in force February 26; and if they were wrong in fact in so deciding, how could the plaintiff rectify that wrong, if such a decision is allowed to be made on a mere motion to quash? No opportunity is afforded to us to prove that the law was not in force, and thus protect ourselves.

We could only do this upon a plea in abatement, by defendant setting up the matter of abatement and showing it to have arisen prior to the date of our writ; we could then join issue and examine the truth of the plea.

But the court below presumed the law to be in force; not professing to know the fact, or to have any evidence of it.

Our constitution has changed the ordinary rules. Formerly the time our laws took effect was ascertained from the date of approval, or the terms of the law itself, when it specifies the

Allen v. Dunham.

time when a law shall go into operation. But now the taking effect of a law depends upon the happening of an event, which can only be known to have transpired by inquiry and evidence, which may be disputed, and about which both individuals and juries might disagree.

To assume to know such a fact without evidence would be strange presumption; but how much more so, when the presumption is made against a record, and to annul it. In law, a record imports absolute verity—that every fact stated in it is true. And no adjudication can be found allowing a fact to be presumed against a record.

We claim, then, that the defendant should have pleaded in abatement, to enable us to produce evidence to show our right to test the writ in the name of the judge; and could not be permitted to move to quash.

All that we ask is, that when a party, either plaintiff or defendant, claims a law to have been in force at an earlier day than the statute book proves it to have been, he shall establish the fact by evidence in the usual way.

A contrary decision will enable a court to enforce a statute in cases where it is not the law, with impunity.

*David Rorer*, for the defendant. 1. There was no judge at the date of this writ in whose name it could legally be tested. By the act of the legislature of Iowa, dividing the state into judicial districts, passed 4th February, and which went into force on the 10th February, 1847, the old districts are repealed and annulled; and, after that date, there was no district judge in whose name to test the writs; for Judge Mason, though judge, was not assigned to the new district so created.

In answer to this, we are told, that there is no evidence that this law had been published in newspapers, as required by its own language, and the constitution; and that without such proof it is a nullity. We answer to this, that its publication is known and taken notice of by the court as a matter of history; and if this act is void on the ground alleged then,

the authority of the district and supreme courts, to sit as such, is not warranted by law; for the act organizing the latter, and the act providing for the election of the judges, were published in the same manner, and rest on no higher authority. So, if the court below could not enforce the law which it did, this court, on the same principle, has no power to question what was done below. The doctrine is suicidal to the whole judicial authority of the state. Cited, laws of 1847, p. 39; ib., p. 119, §§ 1, 2, and 3; and ib., pp. 66, 68, §§ 1 and 9.

*Opinion by* GREENE, J. · A motion was made and sustained in the court below, to quash the original writ, because it does not bear test in the name of the district judge, as required by statute. (a) The decision upon that motion is the only error assigned in this case.

It appears that the suit was originally commenced, and summons issued, on the 26th February, 1847. But, on the fourth day of the same month, a law was approved by the governor, and on the tenth of that month took effect, by publication in newspapers, dividing the state into four judicial districts. (b) This law having taken effect before the suit was commenced, and there having been no election till the following April, the judges under territorial appointment not having been designated to the new districts, it is assumed for the defendant in error, that there was no judge of the district court in whose name the writ could bear test, and that as a consequence it could not issue with the requisite legal attestation. To this conclusion we can see no legitimate objection.

Though true, Judge Mason, in whose name the writ bore test, had an appointment under our territorial organization, and the constitution of Iowa adopted and continued in force all territorial laws, till altered or repealed, and authorized all officers of the territory to exercise the duties of their offices till superseded under the constitution; still, the new

(a) *Rev. Stat.*, 468, § 1.        (b) Laws of 1847, p. 39.

Allen *v.* Dunham.

law, dividing the state into four judicial districts, evidently abrogates those portions of the old law which divided the territory into three districts, and assigned a judge to each. And thus, the territorial judges, even if authorized by the constitution to act in the double capacity of district and supreme judges of the state, are left without authority or jurisdiction over any particular district. If they were authorized by the constitution to officiate as district judges, yet as they were not designated to particular districts under the new districting law, and there being more districts than judges, it was evidently impracticable and unauthorized to set apart any one judge to any given district, though corresponding in number to the district in which he formerly acted ; and hence the districts remained alike destitute of judges till they were elected by the people.

But may it not be held, with much reason, that the territorial judges could not act in the two-fold capacity of supreme and district judges ? Holding over and acting, as they did, as judges of the supreme court, their official powers were necessarily limited to that court under the constitution ; by which the judges of the supreme court, as also those of the district courts, are limited in jurisdiction and office to their respective courts. In becoming the judge of one court, the incumbent is rendered ineligible to the office of the other. See sections 3 and 4, in the 4th article of the constitution. The organic law of the territory authorized the judges of the supreme court to act as judges of the district courts, but the constitution of the state renders the two offices in the same person incompatible ; and therefore, the territorial judges could hold over only in the capacity they assumed as judges of the supreme court.

It is contended by plaintiff's counsel, that though the law of 1847 would, by districting the state anew, leave an interregnum in the office of district judge, still the court had no right to treat the law as in force on the 26th February, 1847. It is provided by the last section of that law, that it shall take effect from and after its publication in newspapers. The only evidence in the statute of its having been published in news-

papers prior to the 26th February, is a printed note inserted after the act, stating that it was published in the Standard and Reporter, 10th February, 1847. As this note was inserted without authority of law, it is very properly claimed that it proves nothing. And if it proves nothing, it is asked, how could the court determine that the law was in force on the day the writ issued? The ordinary rule for the taking effect of a law is changed by our constitution. Instead of going into operation, as formerly, from the date of its approval, or from a particular day in the law stated, it cannot now take effect till published and circulated in the several counties of the state; or, if deemed of immediate importance, from its publication in newspapers. The question now arises, how is the fact to be determined by or proved to a court when an act of the legislature takes effect. What the laws are, what are in force, and when they commenced taking effect, are matters properly cognizable and within the purview of the courts themselves. As a judge is presumed to know what the law is, so is he presumed to know when it is in force. And as he will, *ex-officio*, notice when a law is enacted, he will in like manner notice its publication and circulation, or its publication in newspapers, when these things are constitutional requisites to the operation of a law.

Judgment affirmed.